1    **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                       **FOR THE DISTRICT OF ARIZONA**

8

9    Bridgett Dorfmeister,                    No. CV-20-00057-PHX-DWL

10                        Plaintiff,          **ORDER**

11   v.

12   Zurich American Insurance Company,

13                        Defendant.

14

15          Pending before the Court is Defendant Zurich American Insurance Company's

16   ("Zurich") motion to dismiss.   (Doc. 10.)   Zurich argues that Plaintiff Bridgett

17   Dorfmeister's claim for bad-faith denial of workers' compensation benefits is barred by

18   the statute of limitations.  For the following reasons, the Court agrees and will grant the

19   motion.

20                               **BACKGROUND**

21   I.     Factual Background

22          The facts alleged in the complaint are as follows.  In November 2016, Dorfmeister

23   injured her back in the course of her employment at Toys R Us.  (Doc. 1-3 at 5-10

24   [complaint] ¶¶ 4-5.)  She filed a workers' compensation claim with Zurich, Toys R Us's

25   insurance provider.  (*Id.* ¶ 8.)  Zurich accepted the claim and paid for several months of

26   physical therapy and other treatments.  (*Id.* ¶¶ 8-9.)

27          This coverage continued until May 2017, when Zurich revoked its authorization for

28   further treatment pending the results of a medical exam.  (*Id.* ¶ 12.)  That same month, the

examining physicians concluded that the injuries for which Dorfmeister had been receiving treatment were unrelated to the injury she sustained at work.  (*Id.* ¶¶ 13-16.)  As a result, Zurich closed Dorfmeister's case and discontinued further payment.  (*Id.* ¶ 17.)

Afterward, Dorfmeister was required to return to work with none of her past restrictions on physical activity.  (*Id.* ¶¶ 10, 22.)  The return to full duty exacerbated her symptoms, so she sought further medical treatment under her private insurance.  (*Id.* ¶¶ 22-23.)

In October 2017, Dorfmeister's new doctor recommended surgery, which Zurich refused to pay for.  (*Id* ¶¶ 24-25.)  Dorfmeister nonetheless had surgery in February 2018.  (*Id.* ¶ 28.)

Around the same time, Dorfmeister filed an objection with the Arizona Industrial Commission ("Commission") concerning Zurich's closure of her claim.  (*Id.* ¶ 26.)  In May 2018, the Commission ruled in Dorfmeister's favor, rescinding the closure and requiring Zurich to pay for continued treatment and disability benefits.  (*Id.* ¶ 27.)  Dorfmeister was subsequently assessed with a 4% permanent disability rating.  (*Id.* ¶ 29.)

Even though her claim had been reopened, Zurich continued to refuse to pay some of Dorfmeister's medical bills.  (*Id.* ¶ 31.)  These bills are beginning to negatively impact Dorfmeister's credit, her living situation, and her marriage.  (*Id.* ¶ 32.)

II.   Procedural History

On December 9, 2019, Dorfmeister filed this action against Zurich in Maricopa County Superior Court.  (*Id.* at 5.)  The complaint alleges a single claim of insurer bad faith.  (*Id.* ¶¶ 33-39.)  Specifically, it alleges that Zurich denied Dorfmeister's claim in bad faith by relying on incomplete evidence, doctor shopping, delaying medical care, first accepting and then denying her claim, and other acts and omissions.  (*Id.* ¶ 36.)

On January 9, 2020, Zurich removed this action to this Court.  (Doc. 1.)  Then, on January 15, 2020, Zurich filed a motion to dismiss.  (Doc. 10.)  The motion thereafter became fully briefed.  (Docs. 11, 12.)

On July 21, 2020, the Court issued a tentative order granting the motion.  (Doc. 14.)

- 2 -

1     On July 28, 2020, the Court heard oral argument.  (Doc. 15.)

2     On August 7, 2020, Dorfmeister filed a supplemental brief.  (Doc. 16.)

3                                                **ANALYSIS**

4     I.     Legal Standard

5            To survive a motion to dismiss under Rule 12(b)(6), "a party must allege 'sufficient

6     factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *In*

7     *re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (quoting *Ashcroft v.*

8     *Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads

9     factual content that allows the court to draw the reasonable inference that the defendant is

10    liable for the misconduct alleged."  *Id.* (quoting *Iqbal*, 556 U.S. at 678).  "[A]ll well-

11    pleaded allegations of material fact in the complaint are accepted as true and are construed

12    in the light most favorable to the non-moving party."  *Id.* at 1144-45 (citation omitted).

13    However, the court need not accept legal conclusions couched as factual allegations.  *Iqbal*,

14    556 U.S. at 679-80.  The court also may dismiss due to "a lack of a cognizable legal theory."

15    *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

16    II.    Discussion

17           Under Arizona law, "[t]he tort of bad faith arises when the insurance company

18    intentionally denies, fails to process[,] or [fails to] pay a claim without a reasonable basis

19    for such action."  *Noble v. Nat'l Am. Life Ins. Co.*, 624 P.2d 866, 868 (Ariz. 1981).  To

20    prove bad-faith denial of a workers' compensation claim, a plaintiff must show:

21           (1) the carrier and the injured worker had an insurer-insured relationship . . . ;
             (2) the absence of a reasonable basis for denying benefits . . . ; (3) the carrier's
22           knowledge or reckless disregard of the lack of a reasonable basis for denying
             the claim . . . ; and (4) traditional tort damages proximately caused by the
23           denial of workers' compensation benefits rather than damages resulting from
24           the workplace injury . . . .

25    *Merkens v. Fed. Ins. Co.*, 349 P.3d 1111, 1114-15 (Ariz. Ct. App. 2015) (quotation

26    omitted).

27           In Arizona, bad faith is an intentional tort subject to a two-year statute of limitations.

28    *Taylor v. State Farm Mut. Ins. Co.*, 913 P.2d 1092, 1095 (Ariz. 1996) (citing A.R.S. § 12-

542).  As with other torts, a claim for bad faith accrues "when a plaintiff knows, or through the exercise of reasonable diligence should know, of the defendant's wrongful act."  *Id.* at 1095.  "The cause of action does not accrue until the insurer breaches, and the insurer does not breach until it denies the claim."  *Ness v. W. Sec. Life Ins. Co.*, 851 P.2d 122, 126 (Ariz. Ct. App. 1992).

In the ordinary case, the inquiry would end here.  Zurich denied Dorfmeister's claim in May 2017, more than two years before she filed her complaint.  Nevertheless, this case presents a potential wrinkle because Dorfmeister's claim arises in the workers' compensation context.  Under Arizona law, only the Commission may determine whether a worker is entitled to such benefits.  *Merkens,* 349 P.3d at 1115.  This is potentially important because whether an insurer unreasonably denied benefits, a necessary element of a bad-faith claim, can only be made in reference to whether an employee suffered a compensable injury.  *Id.*  Dorfmeister argues that, because the resolution of her claim depends on a Commission determination, her claim did not accrue until May 2018, which is when the Commission determined she was entitled to benefits, and her initiation of this lawsuit in December 2019 was therefore timely.  (Doc. 11 at 2.)  Zurich disagrees, arguing that, under *Merkens*, the existence of a pending proceeding before the Commission "does not toll the statute of limitations for the alleged bad faith denial of benefits."  (Doc. 10 at 4-5; *see also* Doc. 12 at 3-6, 9-11.)

In *Merkens*, a worker was injured when she inhaled toxic fumes.  349 P.3d at 1112.  She filed a workers' compensation claim, which her employer's insurer initially accepted.  *Id.*  Later, after three rounds of independent medical examinations, the insurer terminated the claim and stopped making payments.  *Id.*  Rather than contest the termination with the Commission, the worker filed a bad-faith lawsuit against the insurer.  *Id.*  The Arizona Court of Appeals rejected this claim because the plaintiff failed to receive a compensability determination from the Commission.  *Id.* at 1115.  "The reason [was] simple—once an injured worker makes a claim for workers' compensation, the . . . Commission has the exclusive jurisdiction to determine whether the injured worker is entitled to benefits and

the amount of those benefits." *Id.*  "Even if" a court found the insurer had otherwise acted in bad faith, "the finder of fact would have to make a compensability determination to find that [the insurer] unreasonably terminated . . . benefits." *Id.*  After all, "without a compensability determination, the finder of fact could not award as damages any unpaid policy benefits due from the industrial injury because only the . . . Commission can determine whether benefits are due and order payment." *Id.*  At bottom, "to allow a plaintiff to seek damages based on a denial of benefits from the carrier . . . would be akin to ordering that the benefits be paid for, thereby circumventing the . . . Commission's exclusive jurisdiction to decide the issue." *Id.*  So, because the worker failed to pursue her case in the Commission, her bad-faith claim failed as a matter of law.  *Id.* at 1115-16.

Although *Merkens* supports Zurich's position, it is not necessarily dispositive.  This is because *Merkens* addressed a jurisdictional issue (*i.e.,* whether a plaintiff asserting a claim for bad-faith denial of workers' compensation benefits must also obtain a compensability determination from the Commission), not the issue of when such a bad-faith claim accrues.  To be sure, *Merkens* states that a plaintiff need not wait for the Commission's decision before filing a bad-faith claim,[1] but this isn't necessarily the same thing as a holding that such a claim accrues, for statute-of-limitations purposes, at the moment the insurer denies benefits.  Similarly, although *Merkens* observes that "bad faith is separate and not a direct or natural consequence of the compensable industrial injury,"[2] this uncontroversial observation isn't the same thing as a holding that a bad-faith claim accrues at the moment of benefit denial.  The issue of accrual simply wasn't before the *Merkens* court.

Were *Merkens* the only Arizona decision touching upon these issues, this might be a closer case.  However, a different decision—*Manterola v. Farmers Ins. Exch.*, 30 P.3d

---

[1]    *Id.* at 1115 & n.6 (noting that "an injured worker may file a suit alleging bad faith handling of the claim before a final award," which may result in "simultaneous proceedings in both the . . . Commission and superior court," and holding that courts should address this circumstance by "wait[ing] to resolve any dispositive motions, or allow[ing] the case to proceed to a jury, until after the . . . Commission has resolved the challenges to the denial or termination of benefits").

[2]    *Id.* at 1113.

639 (Ariz. Ct. App. 2001)—provides more clarity.[3]  There, the plaintiff (Manterola) sued her psychologist, as well as her psychologist's spouse, after the psychologist engaged in sexual relations with her while she was undergoing treatment.  *Id.* at 641.  The defendants were insured by Farmers, which defended the tort action but reserved its right to contest whether Manterola's claims were covered by the insurance policy.  *Id.*  Farmers also instituted a separate action seeking declaratory relief that it owed no coverage.  *Id.*

Rather than litigate the tort action, the defendants agreed to the entry of a $2 million judgment and assigned their rights, including the right to bring a bad-faith claim against Farmers, to Manterola.  *Id.*  In exchange, Manterola agreed to seek satisfaction of the judgment only against Farmers.  *Id.*  Three years later, Farmers' declaratory relief action was finalized.  *Id.* at 641-42. Ultimately, Manterola's claims against the psychologist were deemed to fall outside the insurance policy but her claims against the psychologist's spouse were deemed covered.  *Id.*

A few months after the coverage determination, Manterola (as an assignee) initiated a bad-faith action against Farmers, arguing that Farmers had improperly denied coverage as to her claim against the psychologist's spouse.  *Id.* at 642.  Farmers moved to dismiss, arguing that the bad-faith claim was time barred.  *Id.*  The trial court agreed, dismissing the case, and the Arizona Court of Appeals affirmed.  *Id.* at 641.  Noting that a bad-faith claim arises when "an actionable wrong exists, that is, a tort that results in appreciable, non-speculative harm to the plaintiff," the court emphasized that Manterola's settlement agreement with the defendants made clear that Farmers had denied coverage and that the defendants (and by assignment, Manterola) had suffered a resulting injury.  *Id.* at 643-44 (internal alterations and citations omitted).  The agreement stated that the defendants believed the insurance policies should have covered the claims and that Farmers had wrongfully failed to provide coverage.  *Id.* at 644.  Thus, the court held that by the time

---

[3]      *Manterola* was not cited in the parties' initial briefs but was discussed in the Court's tentative ruling.  During oral argument, Dorfmeister's counsel requested leave to file a supplemental brief addressing *Manterola*.  That request was granted and the Court has now reviewed and considered Dorfmeister's supplemental arguments.

1  this agreement became final, the defendants had all of the information they needed to
2  initiate a bad-faith claim against Farmers—coverage had been wrongly denied and they
3  were aware of that denial.  *Id.* at 644-45.

4          Nevertheless, Manterola argued that the bad-faith claim didn't accrue until the
5  declaratory relief action concluded, because it was only then that a final determination
6  arose as to Farmers' coverage obligations.  *Id.* at 644-45.  The *Manterola* court disagreed,
7  holding that Manterola's argument "conflict[ed] with well-established Arizona law that
8  recognizes a bad faith claim's independent standing, irrespective of coverage."  *Id.* at 645.
9  Put another way, the outcome of the coverage action "did not control when Manterola's
10 bad faith claim accrued."  *Id.* at 645.   Thus, the court rejected the argument that bad-faith
11 claim "did not accrue until the [declaratory relief action's] coverage determination became
12 final."  *Id.* at 645-46.

13         In reaching this conclusion, the court acknowledged that "a bad faith claim based
14 solely on a carrier's denial of coverage will fail on the merits if a final determination of
15 noncoverage ultimately is made."  *Id.* at 646.   The court also acknowledged that
16 "Manterola's ability to prove one element of her bad faith denial of coverage claim—
17 unreasonableness—depended on the outcome of the [coverage determination]."  *Id.*
18 Manterola's argument failed, though, because nothing in the coverage proceeding
19 "necessarily render[ed] frivolous any bad faith claim that depended solely on coverage."
20 *Id.*  Such a claim "would have stood or fallen with the resolution of the coverage issue,"
21 but that was not a bar to filing the suit in the first place.  *Id.*  Put simply, the "resolution of
22 the merits of a bad faith claim presents different issues than determination of the accrual
23 of that claim for statute of limitations purposes."  *Id.*   "[E]ven if the final [coverage
24 determination] may have been determinative of [the bad-faith claim], . . . that does not
25 control when the cause of action accrues and when the limitations period begins to run."
26 *Id.* (internal quotation marks and citations omitted).

27         Finally, the *Manterola* court was unconcerned that its conclusion meant bad-faith
28 claims would often go forward with a key element—coverage—still in dispute.  *Id.* at 648.

The court noted the "common practice" of asserting a bad-faith counterclaim in declaratory relief actions and also acknowledged that the two proceedings could be completely separate. *Id.* In either case, "if the bad faith claim . . . hinges solely on the outcome of a coverage issue . . . the parties may stipulate to, or the court on proper motion may order, a stay of the bad faith claim, pending final resolution of the coverage issue." *Id.* Regardless, "the filing and litigation of [the coverage determination] do not delay or directly affect the accrual of a bad faith claim." *Id.*

*Manterola* makes clear what *Merkens* merely hinted at—a bad-faith claim premised on the failure to provide coverage may accrue, for statute-of-limitations purposes, before a final coverage determination has been made.[4] The similarities between this case and *Manterola* are instructive. There, as here, coverage was determined in a proceeding separate from the bad-faith proceeding. There, as here, the plaintiff sought to rely on the coverage decision as the accrual date. But, there, as here, that reliance was misplaced.

In her supplemental brief, Dorfmeister asserts that, under *Taylor*, the Court must apply the "final judgment accrual rule," which would delay the accrual of her bad-faith claim until the completion of the Commission proceeding in May 2018. (Doc. 16 at 5.) But *Taylor* expressly limited the application of this rule to "third-party bad faith *failure to settle* claim[s]." 913 P.2d at 1097 (emphasis added). "The policy underlying the final judgment rule is clear" in such cases—whether a plaintiff has suffered an injury in the failure-to-settle context only becomes clear after judgment becomes final. *Id.* This is so because an appeal may obviate any damages suffered by the plaintiff. *Id.* It also avoids the untenable situation of forcing a plaintiff to sue an insurer while that same insurer is representing the plaintiff in ongoing litigation. *Id.* But this isn't a failure-to-settle case. Instead, Zurich's alleged bad faith stems from its denial of coverage. Bad-faith denial of coverage claims accrue when coverage is denied. *Ness*, 851 P.2d at 126; *Manterola*, 30

---

[4]     The Commission makes "compensability" determinations, rather than "coverage" determinations, but this distinction is immaterial. Indeed, Dorfmeister equates the two. (Doc. 11 at 2.) *Cf. Keovorabouth v. Ariz. Indus. Comm'n*, 214 P.3d 1019, 1021-22 (Ariz. Ct. App. 2009) (indicating that compensability determinations depend, in part, on an employee proving coverage under the workers' compensation statute).

P.3d at 647 n.5 (suggesting that failure-to-settle cases premised on *Taylor* are inapplicable when determining the accrual of bad-faith claims premised on the denial of coverage). This is because denial-of-coverage claims are governed by different policy concerns than failure-to-settle claims. Although the injury from a failure to settle is uncertain until an insured loses and exhausts all appeals, the injury from a denial of coverage becomes certain when coverage is denied because "at that point . . . the nature and extent of the insurer's breach of the covenant of good faith and fair dealing and of the damages that were proximately caused by this breach can be determined." *Ness*, 851 P.2d at 126 (citation omitted). In other words, the injury in a denial-of-coverage case is the denial of coverage itself. Similarly, the concern that an insured would be represented by an insurance company that it is in the process of suing is not present in the denial-of-coverage context—the insured and the insurer become adversarial the moment coverage is denied.

Dorfmeister also contends in her supplemental brief that bad-faith claims premised on the denial of workers' compensation benefits should not be considered "conventional first party bad faith coverage claims" and instead should be subject to the same accrual rules as third-party bad-faith actions. (Doc. 16 at 4.) This argument lacks merit. "A bad faith claim by an injured employee against his or her employer's workers' compensation carrier is considered a first-party claim." *Mendoza v. McDonald's Corp*, 213 P.3d 288, 298 (Ariz. Ct. App. 2009). Put simply, Arizona courts have already determined that the law governing first-party bad-faith claims applies in the workers' compensation context.[5]

In a related vein, Dorfmeister asks the Court to conclude, as a matter of public policy, that bad-faith claims premised on the denial of workers' compensation benefits do not accrue until a final determination of coverage has been made. The difficulty with this argument is that this Court—a federal court, sitting in diversity, in a case involving a state-law claim—is not at liberty to override policy judgments that have already been made by

---

[5] Dorfmeister incorrectly contends that *Merkens* altered this conclusion. In fact, *Merkens* cited, with approval, both *Mendoza* (which applies first-party bad-faith law to workers' compensation claims) and *Noble* (which states that a first-party bad-faith claim arises at the time an insurer denies benefits). *Merkens*, 349 P.3d at 1113, 1115.

- 9 -

the Arizona state courts.  And as *Manterola* and *Merkens* make clear, addressing compensability and bad faith in separate proceedings is a well-established feature of Arizona law—in Arizona, a bad-faith claim may accrue before coverage is determined.  It is not this Court's place to second-guess the wisdom of that approach, even though it may lead to the filing of some bad-faith claims that later prove untenable.

The bottom line is that a bad-faith claim accrues once there are "appreciable, nonspeculative damages."  *Manterola*, 30 P.3d at 647.  In first-party bad-faith actions, that occurs on the date an insurer denies a claim.  *Ness*, 851 P.2d at 125 ("The cause of action does not accrue until the insurer breaches, and the insurer does not breach until it denies the claim.").  Thus, Dorfmeister's claim accrued no later than June 5, 2017.  (Doc. 10 at 3 n.2.)  The two-year statute of limitation expired in June 2019.  Because Dorfmeister didn't initiate this action until December 2019, it is time barred.

In addition to her *Merkens*-based argument, Dorfmeister asserts that her claim didn't accrue until damages were set and causation was established.  (Doc. 11 at 7-9.)  These arguments are unpersuasive.  Her damages argument focuses on the fact that "[a] cause of action does not accrue until damages are irrevocable."  (*Id.* at 8.)  That proposition is unremarkable, and Dorfmeister misapplies it here.  The cases on which she relies involved legal malpractice claims.  In that context, damages become appreciable and non-speculative only when "the plaintiff's damages are certain and not contingent upon the outcome of an appeal."  *Amfac Distrib. Corp. v. Miller*, 673 P.2d 795, 796 (Ariz. Ct. App. 1983).  Importantly, *Amfac* and related cases gave rise to the rule in *Taylor*.  *Taylor*, 913 P.2d at 1096-97.  Accordingly, those cases are inapplicable here for the same reason the rule in *Taylor* is inapplicable.  *See also Thompson v. Prop. & Cas. Ins. Co. of Hartford*, 2015 WL 1442795, *4 (D. Ariz. 2015) ("Because Hartford unequivocally denied coverage under the Policy in its May 3, 2011 letter, Hartford's alleged breach of the Policy began on that date, and Plaintiff's cause of action for bad faith accrued on that date.").

Dorfmeister's argument that causation must be established before her claim accrues fares no better.  This argument relies on a misreading of *Merkens* the Court has already

rejected.  *Cf. Manterola*, 30 P.3d at 647-48 (rejecting an argument that establishing coverage was necessary before a claim accrued because "[i]f the rule were otherwise, it could be argued that any cause of action, regardless of its basis, does not accrue for statute of limitations purposes unless and until all elements of the claim are provable or some determination of fault or liability has been made").

Accordingly, **IT IS ORDERED** that Zurich's motion to dismiss (Doc. 10) is **granted**.  The Clerk of the Court shall enter judgment accordingly and terminate this action.

Dated this 13th day of August, 2020.

_____
Dominic W. Lanza
United States District Judge